UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARILYN ANN BRADY,<br><br>               Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>               Defendant. | Case No. C13-390-BAT<br><br>**ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE CASE** |

Marilyn Ann Brady seeks review of the denial of her application for Disability Insurance Benefits. She contends the ALJ erred by (1) failing to consider whether Ms. Brady suffered from a severe mental health impairment, (2) improperly assessing the medical evidence, (3) incorrectly discounting the credibility of the testimony of Ms. Brady, (4) incorrectly determining Ms. Brady capable of performing her past relevant work and prematurely terminating her inquiry at step four. Dkt. 14 at 2. As discussed below, the Court recommends the Commissioner's decision is **AFFIRMED** and the case is **DISMISSED** with prejudice.

**BACKGROUND**

Marilyn Brady is currently 57 years old, has a high school degree and some college

ORDER AFFIRMING THE COMMISSIONER
AND DISMISSING THE CASE - 1

education, and has worked as a corporate trainer and insurance licensing supervisor.[1] In February 2010, she applied for benefits, alleging disability as of June 1, 2006. Tr. 161-62. Her applications were denied initially and on reconsideration. Tr. 90-92, 95-99. The ALJ conducted a hearing on September 7, 2011 (Tr. 28-86), and subsequently found Ms. Brady not disabled. Tr. 12-23. As the Appeals Council denied Ms. Brady's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-5.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:** Ms. Brady had not engaged in substantial gainful activity since June 1, 2006.

**Step two:** Ms. Brady's idiopathic pulmonary fibrosis and bilateral carpometacarpal joint early osteoarthritis are severe impairments.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity ("RFC"):** Ms. Brady can perform less than the full range of light work as follows: she can lift 10 pounds frequently and 10 pounds occasionally. She can perform jobs that require occasional kneeling, crawling, crouching, stooping and climbing of ramps and stairs. She can perform jobs that require frequent handling and fingering. She must avoid moderate exposure to fumes, gases, humidity and extreme hot or extreme cold temperatures.

**Step four:** Ms. Brady can perform her past work as a training representative, insurance licensing supervisor, and procurement clerk, and is therefore not disabled.

Tr. 12-23.

## DISCUSSION

**A.  The ALJ Did Not Err at Step Two.**

Ms. Brady argues that the ALJ should have considered her depression diagnosis at step

---

[1] Tr. 36-44.
[2] 20 C.F.R. §§ 404.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER AFFIRMING THE COMMISSIONER
AND DISMISSING THE CASE - 2

two. The record does mention depression on a couple of occasions. *See* Tr. 398, 401. Ms. Brady's pulmonologist recommended that she pursue individual counseling and referred her for an initial psychological evaluation: a social worker diagnosed Ms. Brady with "major depressive episode" and recommended that she return for individual therapy. Tr. 401. There is no evidence in the record that Ms. Brady ever did so. Ms. Brady did not mention depression or identify any functional limitations due to depression in either her written function report (Tr. 214-21) or at the administrative hearing (Tr. 32-71).

As the plaintiff, Ms. Brady has the burden to establish the existence of a severe impairment at step two. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) ("The severity regulation requires the claimant to show that he has an 'impairment or combination of impairments which significantly limits' 'the abilities and aptitudes necessary to do most jobs.'" (quoting 20 C.F.R. §§ 404.1520(c), 404.1521(b) (1986))). Because Ms. Brady failed to present any evidence establishing the existence of any functional limitations caused by her depression, the ALJ did not err in failing to address depression at step two.

**B.     The ALJ Did Not Err in Failing to Give Controlling Weight to Dr. Willner's Opinion.**

Andrew N. Willner, M.D., is Ms. Brady's primary care physician, and saw her twice a year for 4.5 years before rendering a September 2011 opinion regarding her functional limitations. Tr. 755-63. Dr. Willner had also previously opined that Ms. Brady was "permanently disabled from work" due to her oxygenation limitations. Tr. 346.

The ALJ considered Dr. Willner's opinions, but explained that she discounted his opinion regarding disability because that issue is reserved to the Commissioner. Tr. 21. She also discounted the subsequent opinion because it is inconsistent with the medical evidence, specifically the multiple tests conducted by Ms. Brady's pulmonologists and other specialists,

ORDER AFFIRMING THE COMMISSIONER
AND DISMISSING THE CASE - 3

showing that her pulmonary function was relative stable and only mildly abnormal (see Tr. 16-20 (ALJ's summary of Ms. Brady's medical tests)), and inconsistent with Ms. Brady's own descriptions of her functioning. Tr. 21.

Ms. Brady contends that Dr. Willner's opinions should have been given "controlling weight," but fails to acknowledge the circumstances that must exist in order for a medical opinion to be afforded controlling weight. First, medical opinions as to disability, such as Dr. Willner's first opinion, can never be given controlling weight. Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, at *2 (Jul. 2, 1996) ("However, treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance."). Second, assigning controlling weight to an opinion is inappropriate if it is inconsistent with other substantial evidence of record (SSR 96-2p, 1996 WL 374188, at *1-2 (Jul. 2, 1996)), and here the ALJ identified inconsistencies with other medical evidence as well as Ms. Brady's own testimony: Ms. Brady has failed to establish that the ALJ unreasonably interpreted the evidence to be inconsistent or that the ALJ otherwise erred in finding the evidence to be inconsistent. Thus, neither of Dr. Willner's opinions is entitled to controlling weight, and Ms. Brady has failed to allege that the ALJ's assessment of Dr. Willner's opinions was deficient in any other respect.

**C.   The ALJ Did Not Err in Assessing the Limitations Caused by Ms. Brady's Hand Complaints.**

Ms. Brady contends that the ALJ erred in failing to fully account for her hand-related limitations. Dkt. 14 at 11-12. The ALJ limited Ms. Brady to "frequent" handling and fingering (Tr. 15), which would not preclude keyboarding for more than 15 minutes at a time, and Ms. Brady apparently contends she is unable to do such activity. Dkt. 14 at 12 (arguing that the ALJ did not fully account for her hand limitations, but failing to identify a particular error).

ORDER AFFIRMING THE COMMISSIONER
AND DISMISSING THE CASE - 4

The medical record does not support Ms. Brady's argument, however. She was evaluated by hand surgeon Charles Russell, M.D., in April 2011, diagnosed with bilateral osteoarthritis in the carpometacarpal joint of her thumbs, and referred to occupational therapy. Tr. 696-98. Dr. Russell also noted that Ms. Brady maintained "full active digital range of motion of the hands without triggering." Tr. 697. Her occupational therapist performed an initial evaluation, recommending twice-weekly sessions for four weeks, and Dr. Russell noted in May 2011 that occupational therapy "will be discontinued to a home exercise program when her progress plateaus." Tr. 691. Dr. Russell did not note any particular functional limitations associated with her osteoarthritis, but he mention that Ms. Brady reported a slight decrease in pain after starting treatment, but experienced a recurrence of pain in the right thumb while gardening. Tr. 690. He recommended that she continue using orthosis on the right, as opposed to receiving a cortisone injection, because her joint is "relatively normal." Tr. 691. If pain recurred on the left, Dr. Russell would consider a cortisone shot there. *Id.*

This medical evidence does not establish that Ms. Brady is any more limited than found by the ALJ. Neither Dr. Russell nor an occupational therapist provided any opinions regarding Ms. Brady's functional abilities, and Dr. Willner did not cite any evidence to support his opinion that Ms. Brady is limited to occasional handling and fingering. *See* Tr. 757. Accordingly, Ms. Brady has failed to establish that the ALJ erred in restricting her to frequent handling and fingering.

**D.     The ALJ Did Not Err in Discounting the Credibility of Testimony Provided by Ms. Brady or Her Husband.**

The ALJ discounted the credibility of Ms. Brady's subjective testimony for three reasons: (1) inconsistent medical evidence (Tr. 16-20 (the ALJ's lengthy summary of medical findings)); (2) inconsistent self-reported daily activities, including the ability to prepare meals, drive,

ORDER AFFIRMING THE COMMISSIONER
AND DISMISSING THE CASE - 5

perform household chores, wash dishes, do laundry, water plants, complete light cleaning and gardening, use a computer, travel to visit her parents, manage her self-care, shop for groceries, visit the drugstore, babysit, and practice yoga 2-3 times per week (Tr. 20); and (3) the ALJ's personal observations at the hearing of Ms. Brady's ability to communicate effectively (despite allegations regarding voice hoarseness) and minimal coughing (despite allegations that excessive coughing prevents work) (Tr. 20).

Ms. Brady's challenge to the ALJ's adverse credibility finding touches on only one of the reasons provided by the ALJ: her daily activities. Dkt. 14 at 12-13. She argues that the "ALJ erred in finding that Ms. Brady is able to perform work-like activity." Dkt. 14 at 12. But the ALJ did not so find: the ALJ found that Ms. Brady's daily activities were inconsistent with her subjective complaints regarding her severe impairments. Tr. 20. And even if this finding was erroneous, the ALJ provided other reasons to discount her credibility, namely inconsistent medical evidence and the personal observations of the ALJ. Because Ms. Brady has not challenged those reasons, she has failed to establish that the ALJ's adverse credibility finding is erroneous. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (holding that including an erroneous reason (among other reasons) to discount a claimant's credibility is at most harmless error if the other reasons are supported by substantial evidence and the erroneous reason does not negate the validity of the overall credibility determination).

Likewise, Ms. Brady has not established that the ALJ erred in discounting the lay testimony provided by her husband, Thomas Cerne. The ALJ indicated the Mr. Cerne's opinions (Tr. 194-201) were inconsistent with the medical evidence, as well as Ms. Brady's own allegations. Tr. 21. Specifically, Mr. Cerne's report described Ms. Brady as significantly more limited than Ms. Brady herself did. *Compare* Tr. 199 *with* Tr. 219. These are germane reasons

ORDER AFFIRMING THE COMMISSIONER
AND DISMISSING THE CASE - 6

to discount Mr. Cerne's report. *See Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996) (holding that the ALJ may reject lay testimony upon giving germane reasons). Accordingly, Ms. Brady has failed to establish that the ALJ erred in discounting either her testimony or her husband's testimony.

**E.     The ALJ Did Not Err at Step Four, or in Failing to Proceed to Step Five.**

Ms. Brady argues that because the ALJ found that she cannot perform light work, the ALJ erred in finding that she could work as a training representative or insurance licensing supervisor, because these jobs are classified as light. Dkt. 14 at 14-15. Ms. Brady misstates the ALJ's step-four finding, however: the ALJ indicated that Ms. Brady could perform "less than the full range of light work," and the vocational expert testified that a hypothetical claimant with the ALJ-determined RFC could perform the jobs of training representative or insurance licensing supervisor. *See* Tr. 15, 73-74. Ms. Brady has failed to identify an error here.

Ms. Brady goes on to argue that the ALJ erred in finding that she could return to past work as a procurement clerk, because she never performed that job with that title. Dkt. 14 at 15. The vocational expert ("VE") testified, however, that Ms. Brady's previous work as an insurance licensing supervisor met the Dictionary of Occupational Titles criteria for a procurement clerk. Tr. 71-72. Ms. Brady has not established that the ALJ erred in finding that her past work included the duties of a procurement clerk; her citation to SSR 82-61, 1982 WL 31387 (Jan. 1, 1982), does not illuminate her assignment of error.

Ms. Brady also argues that the ALJ "erred in not proceeding to step five of the step-five analysis," but overlooks that the ALJ did, in fact, proceed to step five as an alternative, noting that "[a]lthough the claimant is capable of performing past relevant work, there are other jobs existing in the national economy that she is also able to perform," such as general office clerk,

appointment clerk, telephone solicitor, and check cashier.  Tr. 22.

Finally, Ms. Brady argues that even though the ALJ's hypothetical to the VE included a prohibition on "even moderate exposure to fumes and gases and humidity, as well as high temperatures and very cold temperatures," and the VE testified that the jobs she identified were consistent with that prohibition, the ALJ failed to establish that such a restriction could be accommodated in the national economy.  Dkt. 14 at 16.  Ms. Brady's curious argument overlooks the purpose of expert vocational testimony: the ALJ is entitled to rely on the VE's testimony regarding the availability of jobs in the national economy, and the requirements for those jobs.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005) ("An ALJ may take administrative notice of any reliable job information, including information provided by an ALJ.  A VE's recognized expertise provides the necessary foundation for his or her testimony." (citation omitted)).

That the VE did not expressly discuss the frequency of exposure to fumes, gases, or humidity with respect to any of the jobs identified is not relevant; the VE expressly testified that the hypothetical claimant (with the restriction on even moderate exposure to fumes/gases/humidity) could perform those jobs.  Tr. 73.  That the VE testified on cross-examination that additional limitations, as described by Ms. Brady's attorney, would preclude the hypothetical claimant's ability to perform the identified jobs is inapposite, because Ms. Brady has not established that the ALJ erred in omitting those additional limitations from the RFC assessment/hypothetical.  For these reasons, Ms. Brady has failed to establish error in the ALJ's findings at steps four and five.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is

ORDER AFFIRMING THE COMMISSIONER
AND DISMISSING THE CASE - 8

1 | **DISMISSED** with prejudice.

2 | DATED this 24th day of September, 2013.

3

4 | _____
BRIAN A. TSUCHIDA
5 | United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER AFFIRMING THE COMMISSIONER
AND DISMISSING THE CASE - 9